v. Munoz. Jose Munoz. Good morning, councils. May I, Your Honor? Good morning. You may proceed. Good morning, Your Honors. May it please the Court, my name is Arnold Levine and I represent Jose Munoz on this appeal. Mr. Munoz's convictions must be reversed because the trial court committed numerous evidentiary errors in this case. First, there is . . . You made a lot of . . . you raised a lot of issues . . . Yes. . . in your brief. I wonder if you would stick to the two or three that you think are most compelling? That's my plan, Judge. Excellent. Trust me. Yes, Judge. I think the first issue that jumps out is the one on which this Court focused in U.S. v. Cummings. Cummings was Mr. Munoz's co-defendant at trial. In this Court, Your Honor, Judge Pooler authored the opinion reversing Mr. Cummings' convictions in full. It was hearsay in that case. It was, however, two pages of Your Honor's decision on the prejudice. And in looking at Your Honor's harmless error analysis, you said that it's really the same considerations as would be viewed under 403. And therefore, I think that the harmless error analysis in that case is really instructive here on the 403 analysis. What's the harm here in light of the fact that Munoz admitted in his own testimony to having a desire to hurt the cooperating witnesses? Well, I think saying a desire to hurt is different than saying I'm going to stab him if he comes to my cell, to my housing area, and if he goes to yours, I want you to stab him up. Hurt is very vague. It leaves a lot of things open and it doesn't conjure up images of the violence of a jailhouse stabbing, never mind sort of recruiting somebody else to do jailhouse stabbing themselves. And there's the cumulative effect of these things, of that coupled with the jurors' hearing that Mr. Munoz was spent two years in jail from 2008 to 2010 and all the other hearsay evidence that was allowed in. So there's a cumulative effect of these things and the impression it makes on a jury about his dangerous, his murderous propensity, his willingness to do it. And in fact, it's more prejudicial here, I think, than I think it was in Cummings' case. In Cummings, it was more hypothetical. It was, you know, if he threatened to shoot the person, but of course, he was in jail. So that's more theoretical and hypothetical. Whereas here, it was about Mr. Munoz saying what he would do actually in the jail and encouraging Mr. Nichol to do the same thing in the jail. So it creates an even greater danger. You can't be sure that the jury wouldn't use it for propensity evidence rather than evidence of a particular threat. Isn't that the fear that was articulated in Cummings and here as well? Yes, that's exactly the fear. And in fact, you're . . . It said, the court said in its decision on this issue that inappropriate limiting instruction can make this all right. Was there ever a limiting instruction given? There was not. In fact, in Cummings, this court noted that and said that that exacerbated the error in allowing the evidence in. And why wasn't it given? Was it not requested by the defendants? Well, in the judge's original decision, granting the government's application to admit the evidence, he said that he would give a limiting instruction, but then he never did. It was never raised again during the charge conference as far as I could tell. Is it possible that the defendants didn't want to have it reiterated and made a strategic decision not to request it? Your Honor, I don't know, of course, that it's outside the record as to what was going on in that counsel's mind. Of course, he did object to the evidence coming in in the first place on federal free grounds. He did know that the court did say that it would issue a limiting instruction, and it didn't object to that. So I have no reason to think, based on the record, that trial counsel made a strategic decision not to request a limiting instruction. All right, continue. In fact, the court also noted in Cummings that the prosecution in the summation then used that evidence incorrectly for purposes for which it was not offered, and actually told the jurors that this was evidence actually of guilt, as opposed to the consciousness of guilt and how it bore on the other issues. I don't know if that's true. I mean, are you talking about in the summation? In summation, yes. I mean, let's look at that. Let's look at page 2161 of the transcript. You know, the government counsel says, now the importance of the cooperative testimony was not lost on Cummings or Munoz, and then he talks about the various threats to cooperating witnesses, and then the government says, and you know why Cummings and Munoz made those threats. You know why Cummings and Munoz did not want those people to testify. Cummings and Munoz knew that the testimony would be very, very damaging to them at trial. Isn't that consciousness of guilt? It is, but it went further. In fact, in Cummings, if I can quote from Cummings, in speaking about the threats, this court said, the government statements in summation exacerbated the injurious effect of Volsey's death threat testimony by inviting the jury to consider such testimony for impermissible purposes. In light of this improper description of Volsey's death threat testimony to the jury, even if it would otherwise have been proper for the government to argue in its summation that the death threats evince conscience of guilt, we cannot conclude that the government placed no undue emphasis on the threats. And that's because the prosecutor actually told them that this was actually devastating proof of guilt, and went, seemed to go further. I'm not sure that I'm just looking at the language, and that testimony, ladies and gentlemen, was, in fact, completely devastating proof of both defendants' crimes, proof that was corroborated again and again by the other witnesses and the other evidence in the case. Couldn't that be the devastating proof being the proof that the defendants did not want the jury to hear, namely, of the defendants' guilt? It could be, but the emphasis they put on it and the way they couched it, I think, made it sound like it was, as the Court found in Cummings, that it was for an improper purpose, and put such emphasis on it that it exacerbated the prejudice of allowing it in the first place, and made it sound, again, the murderous propensity, the violent propensity of Mr. Munoz was what they were counting on there. And so I think it would be unfortunate if Mr. Cummings, if the same evidence and the same arguments were seen as prejudicial to Mr. Cummings and not to Mr. Munoz, and seem to— Here you also don't have the hearsay issue, and you have his testimony. Right. But for the hearsay issue, again, the Court actually was, in examining the harmless error, was looking at the minimal value of the testimony in the first place, regardless, discarding even the hearsay nature of it, was looking at the minimal value of the testimony in the first place, and how it was overwhelmingly prejudicial, on the other hand. Counsel, I'm going to give you a couple more minutes, and I'll give it to the government as well. I would like you to speak about the jury charge, where the district court said that Mr. Munoz, who testified, might have a—might create a motive to testify falsely. Yes, Your Honor. This Court has said that the jurors can't—should not be told by the Court that defendants who testify have a motive to testify falsely. It undermines the presumption of innocence, of course, and due process. I think separating the instruction in Interested Witnesses and the instruction specific to the defendant by a couple of sentences or a page doesn't change that. So when the Court defines Interested Witness, it says, an Interested Witness is one who has a motive to testify falsely, and then some sentences later, tells the jurors, by the way, the defendant is one of those Interested Witnesses, obviously, a simple syllogism gets them to the point that the judge is telling them the defendant, therefore, has the motive to testify falsely. I see . . . You have said that judges shouldn't say that to juries when a defendant testifies. Yes. We have made that clear in a number of cases. Yes, you have. So this is sort of a backdoor way to get in that information. Yes. It's saying sort of indirectly what can't be said directly just by sort of separating them. I think if the judge had told them, had followed up just right away on the Interested Witness instruction and said, by the way, Mr. Munoz is an Interested Witness, it would be very clear under MASA in this Court's cases. I don't think separating it by a couple of other paragraphs changes the message that how they should deal with Mr. Munoz's testimony as an Interested Witness, that he has a motive to testify falsely. Your Honor, there were also many instances of hearsay that were admitted over objection by the trial court. Josh Ureau testified to several instances of hearsay, several of which were messages that were passed on to Mr. Ureau that were supposedly from Mr. Munoz. The identification of Mr. Munoz as the source of that hearsay, of those statements, was itself the hearsay. Josh Ureau did not testify that he saw Mr. Munoz, that he was given those messages directly. In fact, when asked how he heard of those messages and how he knew where it came from, he said that somebody told him that those messages were from Mr. Munoz. That's hearsay. He never identified that intermediary. There was no exception claimed. The government claims that there's somehow a co-conspirator hearsay exception to it, although nobody knows the identity of that person. They certainly haven't made out that that intermediary had the same intent of Mr. Munoz, even if Mr. Munoz was the source. To be a co-conspirator, that intermediary would have had to want that statement to actually have the desired effect, as opposed to simply being a messenger and saying, by the way, somebody says this, I'm just passing on the message. There's no evidence that the person who passed it on to Mr. Ureau had any interest whatsoever in whether that message had its desired effect, and therefore it wouldn't qualify as co-conspirator hearsay. They also can't prove the co-conspirator hearsay just by the statement itself. There really is nothing else. So their argument on that fails. There's also the hearsay that comes from the, that the government allowed in, I'm sorry, my time is up. I didn't realize I had gone over. Just a thought. On the statements over the phone by Shoddy to Ureau. Where Shoddy says, of course in this self-defense case, where Shoddy says to Ureau, why didn't you tell us Munoz was going to be there? We could have avoided this whole problem, this whole situation. Basically, Mr. Young and I wouldn't have come. That's those hearsay for which there was no exception. It's not a statement that's against Shoddy's interest. That doesn't qualify as a statement against penal interest for Shoddy. And bears directly on the self-defense claim, Mr. Munoz, when you testified. And so, that statement was prejudicial and it shouldn't have been admitted. Given that I'm already of my time, I'll- Thank you. Thank you, Your Honor. Counsel? Thank you, Your Honor. May it please the court. My name is Michael Krause. I'm an assistant United States attorney in the Southern District of New York. I represent the United States on this appeal. I did not represent the United States in the trial below. Your Honors, the district court did not abuse its discretion in its evidentiary rulings during this three-week trial. In particular, the district court did not abuse its discretion in admitting evidence that the defendant threatened to kill a cooperating witness. Which you can see was error not to give the limiting instruction. No, Your Honor, not in this case where the government raised this, regarding consciousness of guilt, had been admitted and flagged for the court and for the defense that there is a possibility of a limiting instruction that could be given as part of the jury charge. And the defense chose not to request such a limiting instruction. They therefore waived their ability to argue for that instruction. And it's a strategic, probably a strategic decision to do so by the defendant in this case. I never asked for the corrective or limiting instruction on the jury charge. They did not, Your Honor, no. And there's good reasons to believe that that was a strategic decision here. Namely, that the government did flag this issue and say that, reminded the court, reminded the defense that this evidence had been admitted. And previously, in the motion in limine, the court said that they could provide a limiting instruction and would be open to providing a limiting instruction. The government never opposed any such limiting instruction, and the defense simply chose not to request one. Probably because they didn't want more emphasis to be placed on this death threat evidence, which wasn't a major part of the government's case, but was strong evidence of consciousness of guilt. As defense counsel discussed, this evidence came in through a cooperating witness. It was direct evidence. It wasn't hearsay. That cooperating witness said that Mr. Munoz told him- What was the purpose of this testimony of the death threat? Which, as you know, in both Morgan and Cummings, this court has said is toxic to put in evidence of a death threat. What was the purpose of introducing it? Well, Your Honor, the purpose was to show consciousness of guilt. That because Mr. Munoz was guilty of these offenses and knew these individuals knew about his guilt, namely Bruce Houston, who was a cooperating witness- Sure, looks like it was introduced so the jury could conclude that there was a propensity to commit these awful murders by Mr. Munoz. That was not the government's purpose, Your Honor, and this was extensively briefed before the district court. It was always the government's purpose in introducing this evidence to show consciousness of guilt by the defendant. The defense counsel opposed it in a written brief. The government sought to admit it in a written letter briefed to the court. The district court issued a well-reasoned written decision admitting the evidence. Right, I have the judge's decision here. But didn't you argue also that the evidence of guilt was overwhelming? The evidence of guilt in this case is extremely strong, Your Honor. What was the very purpose of introducing this particular piece of evidence about the death threat? Which, as you know, in Cummings, even though there was hearsay, a panel of this court found toxic enough to order a new trial. Yes, Your Honor, the court found in that case, because the hearsay was admitted improperly, that it wasn't harmless error. We're in a much different position here where the question is whether the district court abused its discretion in admitting evidence under 403. And as Your Honor knows, there's nothing different about the 403 analysis before this court when it comes to threats evidence. And this court has said that when evaluating a district court's decision under 403, you maximize the probative value of that evidence and you minimize the prejudicial effect. The probative value of the evidence was to show consciousness of guilt. This court has held multiple times, as well as talking about the evidence being potentially toxic, has talked about the very probative nature of this evidence in United States v. Baines. Talked about how this evidence can be very powerful in that it shows that the defendant, who's aware of his own conduct and who he participated in that conduct with, if that defendant then wants to threaten to kill or harm that witness, it shows that he knows about his own guilt and is trying to prevent. Why is it cumulative in this three week trial with all the evidence that was introduced of Mr. Muno's bad behavior? Why wasn't it just a cumulative piece of evidence that the government wanted to put before the jury? Your Honor, it's a piece of evidence that shows consciousness of guilt. And here, Mr. Muno's argued that he killed Shameik Young in self-defense. It was legitimate for the government to seek to introduce competent evidence that after he was charged with this offense, he threatened to kill or harm a witness. Thereby showing his own consciousness of guilt as opposed to and to rebut the argument that he committed the offense in self-defense. Your Honor, the government's evidence was strong, but this was one piece of evidence that could be admitted for a limited purpose here to show consciousness of guilt. We flagged the issue repeatedly. We raised it in a brief. The district court gave a well-reasoned analysis of why the evidence was probative and how the prejudicial effect did not substantially outweigh that probative value. And the only question before this court as to that decision is whether the district court abused his discretion in making that 403 balancing. So the important focus, I think, here is the distinction between this case and the case against Mr. Cummings, where the court found that hearsay had been admitted. And the question was, on the overall record of the case, was that hearsay evidence, admission of that hearsay evidence, harmless? Here, it's a much narrower question. The question is whether the district court abused its discretion, and for that question, we maximize the probative value of the evidence, and we minimize the prejudicial effect. So in the government's briefing, the probative value was powerful. It shows consciousness of guilt. The prejudicial effect here, Your Honor, is minimal in this particular case. The defendant was charged with a brutal murder. The court looks to the incremental prejudice. It looks to how prejudice is the evidence in relation to what the defendant is charged with. He's charged with a murder. It's not shocking or incredibly prejudicial for the jury to hear that the defendant also threatened to kill a cooperating witness. So there is probative value, and the prejudicial effect here was slight. To just address the summation, and Judge Abrams, you mentioned that the way in which the government argued the evidence had nothing to do with propensity. The government never said anything about the defendant's criminal propensity or that this threat's evidence showed his criminal propensity or his murderous propensity. The thrust of the summation with respect to this evidence, which is just a couple sentences, was consciousness of guilt. Ms. Waxman, the Assistant United States Attorney on this case, said that the defendants knew that the testimony would be very, very damaging to them at trial. That's classic consciousness of guilt argument. There's nothing about propensity there. And when the government then said it's absolutely devastating evidence, that's a rhetorical flourish on that very point about consciousness of guilt. It is devastating evidence of the crime to show that the defendant knew about the crime, knew about the witnesses against him, and sought to harm those witnesses. The government made those statements in summation. There was no objection lodged. Those particular sentences in the summation were not raised on appeal as any sort of prosecutorial misconduct. It was fair argument based on properly admitted evidence. And so there is no error with respect to the threat's evidence. Your Honor, just to briefly address the other forms of purported hearsay that were challenged by the defendant in this case. Mr. Yoro's testimony, he's one of the cooperating witnesses, regarding statements made to him by Mr. McCollum, who is one of the participants in the shooting that led to the death of Mr. Young. Those are clear statements against penal interest by Mr. McCollum. Mr. McCollum, but the messenger may not have been a member of this conspiracy, or we don't know. There's no evidence. Your Honor, that's on the request by Mr. Munoz that Mr. Yoro not testify in the prison. Your Honor, the government makes the argument that those statements are statements made in furtherance of a conspiracy. There was one of the statements. There's no evidence that the messenger was a member of the conspiracy. So how could the statements be made to benefit the conspiracy? We don't even know who the messenger was, I don't think. Does the record tell us? It does not say in the record. We don't know if he was a member of the conspiracy or not. Therefore, how could they have been to further the conspiracy? Your Honor, in Gupta, this court said that the district court can look to the overall context in which the statement is given. And also look at the statement itself to determine whether they are in furtherance of a conspiracy. Here, the conspiracy was to obstruct justice. It's clear that this messenger, that this individual was communicating on behalf of Mr. Munoz a desire for Mr. Yoro not to testify. In the government's view here, that it was not an abuse of discretion for the district court to admit that evidence. Even if that one discreet item of hearsay was error, it's clearly harmless error in this case on this record. It was not a major part of the trial. It was not overly emphasized in summation. I gave the other side an extra couple minutes. Why don't you take a couple minutes too? I have another question. Yes, Your Honor. I didn't mean to interrupt you. Not at all. Consciousness of guilt. Here Mr. Munoz testified himself, didn't he? And he testified that he shot Mr. Young in self-defense. So what more consciousness of guilt do you need? Why would you need this threat, this death threat, to prove consciousness of guilt when he said he did it? He said he did it, but- Why isn't it cumulative is my question. I understand, Your Honor. He said he did it, but he said he did it for this defensible reason. He said he did it in self-defense. Right. It is- But you know he did it. That was the point. But the consciousness of guilt also goes to his state of mind. So the question for the jury was whether to believe that Mr. Munoz shot Mr. Young in self-defense or whether he simply murdered him. It is relevant evidence for consciousness of guilt. But how does the death threat illuminate that question for the jury? It does show that the defendant was so worried about his own guilt and testify about that guilt that he was willing to go so far as to threaten to harm that witness. And it is evidence that could go to rebut a claim of self-defense in this case. Is there any case where this has been used to rebut a self-defense, a defense based on self-defense? Is there any evidence that we allow almost anything in to prove consciousness of guilt when the defendant testifies that I did this in self-defense? I haven't found any, but if you have any cases, I would be very interested in having them. I don't have a case on hand to that specific point, Your Honor. But the government's argument is not that almost anything can come in if the defendant testifies. The argument is that in this case, on a well-reasoned arguments by both sides, the district court did not abuse its discretion in deciding that this discrete threats evidence was probative evidence of guilt. And that evidence was not substantially outweighed by any possible prejudicial effect. And for that reason, Your Honor, the conviction should be affirmed. Thank you, counsel. Thank you, Your Honor. Mr. Levine, you have two minutes for a rebuttal. Thank you, Your Honor. First, as to the death threat evidence, I think the government sort of just made my point. The death threat evidence was brought out through Jose Nicole about threats supposedly made to stab Bruce Houston. Bruce Houston wasn't a witness to the murder of Shameik Young. I don't believe he testified at all to the murder of Shameik Young. But just now, the government just argued that somehow that death threat evidence was relevant to the murder of Shameik Young. And I submit that's because they can't get out of their way of thinking that it showed that Mr. Munoz is a violent person willing to take things into his own hands and be the initial aggressor against Mr. Young as he supposedly was going to be against Mr. Houston. So I think that they've sort of made my point by conflating those two issues subconsciously or not. The consciousness of guilt, Your Honor, I think consciousness of guilt evidence is when it's supposedly threatening a witness who you think is going to be testifying against you. To think that it's automatically because you know that you're guilty, I think is actually not correct. If they know that somebody's going to be testifying for the prosecution, you know they're going to be testifying against you. You know they're going to be saying things that hurt you. But it doesn't mean you know they're the truth. If you had the same incentive, if you think that person's going to be lying against you and making up and fabricating stories to lock you up for the rest of your life, you would have every incentive then to do something or threaten that person. It doesn't mean that you know you're guilty, that you know you didn't act in self-defense when you did. It's that you know this person is going to be acting on behalf of the government and has a deal with the government and is going to be lying against me to lock me up. That's the problem. Not that I know I'm guilty, but that he's going to say I'm guilty. I think that I'm about to finish my time. Thank you, Your Honor. Thank you both. Thank you very much. Very well argued. Judge Winter, before I let these counsel go, do you have any questions? No. Thank you.